IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

RONALD LEE LEMONS,

        Plaintiff,

v.                                                                 CIVIL ACTION NO. 5:13-mc-00109

BILL KANZMEIER,

        Defendant.

**ORDER**

The Court has reviewed the *Defendant Bill Kanzmeier's Motion to Withdraw the Reference* (Document 1) and the Plaintiff's *Response* (Document 2) thereto. The Defendant urges the Court to find that the above-styled action is a non-core proceeding and withdraw the reference to the bankruptcy court pursuant to 28 U.S.C. 157(d). The Plaintiff argues that the matter is a core proceeding which arose out of a previous core proceeding handled by the bankruptcy court, and should remain in the bankruptcy court. After careful review and consideration, the Court finds that the Defendant's motion should be denied.

The present dispute involves a debt settled by the Plaintiff/Debtor, Ronald Lee Lemons, with Rolling Hills Bank and Trust (Iowa Bank) during the course of the bankruptcy proceedings. (Pl.'s Compl. ¶ 6, att'd as Ex. A to Def.'s Mot.) The Plaintiff alleges that the debt settled with Iowa Bank arose from a promissory note he signed for "a transaction in which the defendant, Bill Kansmeier was the actual undisclosed beneficiary." (*Id.* at ¶ 7.) Mr. Lemons states "[t]hat the debtor is in bankruptcy in large part due to the default on the promissory note that the debtor signed

for the benefit of Bill Kanzmeier." (*Id.* at ¶ 12.) The debt with Iowa bank was settled for $100,000, and the plaintiff seeks to recover that amount, plus related attorney's fees, from the Defendant. (*Id.* at ¶¶ 6, 11, 13, 14.)

The Plaintiff argues that "this adversary proceeding is the fruit of [the proceeding between Iowa Bank and Mr. Lemons]…litigated before the Bankruptcy Court for this district," and "may never have been brought had it not been for the settlement of the dischargeability complaint [with Iowa Bank]." (Pl.'s Resp. at ¶¶ 1, 14, Document 2.) Plaintiff further contends that the recovery of these funds is necessary for the administration of the bankruptcy estate and to pay claims. (*Id.* at ¶ 13.) The Defendant argues that whether this action is a core proceeding must be examined independently of all other causes of action at issue, including the adversary proceeding and settlement between Mr. Lemons and Iowa Bank.[1] (Def.'s Reply at ¶ 2.) The Defendant further contends that a proceeding cannot be core unless it involves a right created by bankruptcy law or which could not exist outside of bankruptcy, and that the "Plaintiff's claims for restitution, indemnification, or contribution clearly arise under state law." (*Id.* at ¶¶ 3, 5.) The Defendant further points out that he "<u>has not</u> filed a proof of claim in the main bankruptcy case," and thus, has not consented to the jurisdiction of the bankruptcy court. (*Id.* at ¶ 7 (emphasis in original.))

The Southern District of West Virginia's local rules declare that "all proceedings arising under Title 11 or arising in or related to a case under Title 11, are referred to the Bankruptcy Court for disposition." L.R. Civ. P. 83.13 (citing 28 U.S.C. § 157(a)). The Court may, however, withdraw a reference "on its own motion or on timely motion of any party, for cause shown." 28

---

[1] The Defendant cited many cases to support this proposition, but none that are binding precedent within the Fourth Circuit, which does not appear to have adopted such a rule. Regardless of the applicability of the rule, considering each cause of action independently does not require the court to ignore the relationship between this cause of action, the broader bankruptcy case, and the prior adversary proceeding that instigated this action.

2

U.S.C. § 157(d). Six relevant factors courts examine when assessing whether to withdraw a reference for cause include:

> (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy law; (3) promoting judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial.

*In re U.S. Airways Group, Inc.*, 296 B.R. 673, 682 (E.D.Va. 2003). While not dispositive, "the first factor – whether the matter is core or non-core – generally is afforded more weight than the others." *In re O'Brien*, 414 B.R. 92, 98 (S. D. W.Va. 2009) (Johnston, J.). The Court notes, however, that "[s]imply because the proceeding presents questions of state law does not necessarily mean that the proceeding is non-core or otherwise beyond the jurisdiction of the bankruptcy courts." *Blackshire v. Litton Loan Servicing, L.P.*, 2009 WL 426130 *2 (S.D. W. Va. 2009) (Goodwin, C.J.) (not reported). Instead, "[t]he dispositive issue...is the centrality of the proceedings to the bankruptcy case." *Id.* Several factors may assist the court in distinguishing a core proceeding from non-core:

> (1) the claims are specifically identified as core proceedings under 28 U.S.C. § 157(b)(2).; (2) the claims existed prior to the filing of the bankruptcy case; (3) the claims are based entirely on state law or otherwise existed independently from title 11; and (4) the parties' rights or obligations are significantly affected by the outcome of the bankruptcy proceedings.

*Id.* "The distinction between core and non-core issues is not always clear, especially in cases where state-law claims are precipitated by the financial dealings of a bankrupt debtor." *In re O'Brien*, 414 B.R. at 98.[2]

---

2 The Defendant argues that *In re O'Brien* is inapplicable here because of the differing positions of the parties in that case. While the facts of *O'Brien* are not identical, the reasoning remains instructive.

3

Whether this is or is not a core proceeding is a close issue with a great deal of room for debate, both as to the individual factors and as to the ultimate determinaiton. The Plaintiff's claims appear to be central to the bankruptcy proceeding, which he contends might not have been necessary if not for the Defendant's alleged failure to pay on the debt at issue here. The Plaintiff's claim does not clearly fall within any of the claims listed under 28 U.S.C. § 157(b)(2), but it could fit within or implicate (A), as a matter concerning the administration of the estate, to the extent that the money sought is necessary for paying estate debts; or (I) determinations as to the dischargeability of particular debts, to the extent that this action arises from a dischargeability claim; or (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, to the extent that this case involves payment made to a creditor, which the debtor seeks to recover so that the money can be paid to other creditors.

The remaining factors are no clearer when applied to this case. The claims existed prior to the filing of the bankruptcy case in the sense that Mr. Lemons and Mr. Kanzmeier allegedly entered into a contract that created an obligation on the part of Mr. Kanzmeier prior to the bankruptcy filing, but the present claim is dependent upon the settlement of the Iowa Bank claim against Mr. Lemons, which was part of the bankruptcy case. The same tension exists with respect to the third factor: the claim is based on state law, but is not "independent" of Title 11 because it arose from a Title 11 nondischargeability claim. Finally, the parties' rights and obligations are significantly affected by the outcome of the bankruptcy proceedings to the extent that (a) the Plaintiff contends that this money is needed to administer the bankruptcy estate, and that he might

4

not have needed to file for bankruptcy but for the Defendant's failure to pay the debt at issue and (b) the amount at issue was determined through settlement of a bankruptcy claim.

As litigation proceeds in this case, the precise interests at stake and type of claim at issue will likely become more clearly defined.[3] Based on the facts and arguments as presented, the factors above indicate that this action is likely a core proceeding. The Court will, however, abstain from making a finding as to whether this action is core or non-core based on the current record. *See In re O'Brien,* 414 B.R. 92, 102 (S.D.W. Va. 2009) (declining to make a finding as to whether the action was core or non-core). Should the parties continue to dispute whether this action is a core proceeding, the bankruptcy court may consider their arguments and make a determination. 28 U.S.C. § 157(b)(3) (providing that the bankruptcy judge shall determine whether a proceeding is core or non-core, which determination shall not be made solely on the basis that resolution may be affected by state law).[4]

Assuming *arguendo* that this action is not a core proceeding, the remaining favors weigh heavily against withdrawal of the bankruptcy reference such that this would be one of the rare cases in which a non-core proceeding should not be withdrawn. In particular, judicial resources would be wasted by a withdrawal of the reference in this case. The bankruptcy court is already familiar with the issues involved because of the undisputed core proceeding that preceded and instigated this action. In addition, the Plaintiff/Debtor asserts that the funds at issue would be used to administer his bankruptcy estate and pay claims to creditors. As such, the bankruptcy

---

3 For example, the Defendant argues that the Plaintiff has mis-identified this action as one to recover property of the bankruptcy estate when it is really based on a theory of restitution, indemnification, or contribution. (Def.'s Reply at ¶ 4.) With further proceedings, it will become clear whether the Plaintiff is seeking to recover property of the bankruptcy estate or not.
4 If the bankruptcy court determines that this proceeding is not a core proceeding, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1).

court could appropriately coordinate this case within the broader bankruptcy proceedings to best serve the interests of the bankruptcy estate and its creditors.

Efficient use of the parties' resources similarly favors an initial decision by the bankruptcy court, which is familiar with the issues and will be better able to narrow the disputes between the parties. Uniform administration of bankruptcy laws also favors consideration, at least initially, of these claims by the bankruptcy court, which has considered related claims based on the same facts and circumstances at issue here.[5] Further, the Defendant in this case previously sought to transfer venue and was denied by the bankruptcy court.[6] Continued efforts to move the case merely delay disposition, which in turn delays the bankruptcy process in the underlying case. As the Defendant notes, "[n]either party has requested trial by jury, so that factor does not apply in this case." (Def.'s Mem. at note 2, Document 1.)

After thorough review and careful consideration, the Court **FINDS** that the factors weigh in favor of retaining the referral to the bankruptcy court in the above-styled matter.

Accordingly, the Court does hereby **ORDER** that the *Defendant Bill Kanzmeier's Motion to Withdraw the Reference* (Document 1) be **DENIED**.

---

5 The United States District Court for the Northern District of Maryland explains that "[u]niformity of administration is achieved when Bankruptcy Courts handle—at least initially—matters with factual and legal issues in common with the bankruptcy action." *In re Erickson Ret. Communities, LLC*, BR 09-37010-SG11, 2012 WL 1999493 (D. Md. June 1, 2012).

6 Both parties have argued that the other engaged in forum shopping in this case. There is likely some validity to both claims, but the Defendant's continued efforts to move the case after the bankruptcy court rejected his motion to transfer venue weigh against him.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:     November 27, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA